WASHINGTON HYDRAULIC PRESS BRICK CO. v. SINNOTT.

(Supreme Court, Special Term, Kings County.    February 24, 1905.)

1. SALE BY SAMPLE—IMPLIED WARRANTY.

Where plaintiff sent defendant a sample brick of a certain color, which was uniform over the entire surface of the brick, and defendant ordered several thousand bricks of this variety, there was an implied warranty on the part of plaintiff that the bricks delivered would be of the same uniform shade as the sample brick.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, §§ 769–771.]

2. SAME—BREACH OF WARRANTY—RIGHTS OF BUYER.

Where goods ordered by a sample are, when delivered, not equal to the sample, the buyer may either return them or keep them and pay their value.

3. SAME—AVOIDABLE DAMAGE.

Defendant ordered by sample from plaintiff a quantity of bricks, to be of the same uniform color as the sample.    When the bricks were delivered, they were of a mottled appearance, but were used by defendant to construct houses under the impression that the discoloration would wash off, which proved not to be the case.    *Held,* that defendant could not recover from plaintiff the difference between the value of his houses as they were and as they would have been if the bricks had been of uniform color, inasmuch as it was defendant's duty, before using the bricks, to make some test to see whether the discoloration would wash off.

Action by the Washington Hydraulic Press Brick Company against Sadie E. Sinnott.    Judgment for defendant.

Phillips & Avery, for plaintiff.
Geo. C. Case, for defendant.

CRANE, J.    The defendant, Sinnott, ordered 14,000 bricks from the plaintiff at $28.50 per thousand, which were delivered to the defendant in Brooklyn, and for which he owes, as claimed in the complaint, the sum of $192.37, which, with interest to date, makes the total claim $195.41.    The defendant counterclaims for breach of warranty in that 50 per cent. of the bricks as delivered were not of the quality ordered by sample.    It appears that previous to any order given by the defendant for bricks the plaintiff, through its agents, had sent to the defendant a sample brick, known as "shade No. 148," which was offered in evidence as Exhibit 1.    It was 14,000 of these bricks, shade 148, that the defendant ordered.    It appears that the number indicates the color, and the sample received is uniform in shade and color throughout. When these bricks were delivered to the defendant, about 50 per cent. of them were much darker than the shade ordered, and many bricks had at the end or on the face a mottled appearance.    The defendant says he thought the discoloration would wash off, and used them in his buildings, a photograph of which was offered in evidence; but that when he washed them with the acid customarily used to remove dirt or stains he found that the color was a part of the brick.    The defendant also says that some of the bricks delivered were broken, and the only way to use them was to have them cut into half bricks, which work cost him $32.    The defendant claims that he was induced to use

these bricks in their discolored condition in his building upon the statement of the plaintiff's agent that the discoloration would wash off; that he relied upon this statement, and made no examination or test for himself till after the buildings had been erected. There is evidence in the case that the value of the discolored bricks was about $5 per thousand, whereas the value of the bricks as ordered (if we take the contract price as indicating their value) was $28.50 per thousand. The defendant stated that 50 per cent. of the bricks delivered, or 7,000, were thus discolored.

The plaintiffs were manufacturers of the bricks, and advertised them through Exhibit 1 as being of a particular shade; in other words, No. 148, the brick sent to the defendant before he ordered, indicated the shade or color, and according to the sample the coloring or shade was uniform, or of one shade, over the entire surface of the brick, and not discolored in any part thereof. It was this brick, shade No. 148, which the defendant ordered, and there was accordingly an implied warranty accompanying the order and sale that the bricks delivered should be of the shade indicated by No. 148, uniform in color. It is evident that the shade of the brick was an important part of it, and material to the sale. The order by the advertisement or sample sent to the defendant and according to the number was more than a mere description of what was wanted. It amounted to an understanding, agreement, or implied warranty that the bricks delivered would be in accordance with sample. When 50 per cent. of the bricks delivered were not like No. 148 in shade or color, and were discolored, the defendant had two remedies—either to return the bricks, or keep them and pay their value. He has kept the bricks, and, as there is evidence that their value is $5 per thousand he must pay that for them, to wit, $35. As the value of the bricks, if they had been according to contract, would have been $28.50 per thousand, or $199.50 for the 7,000, and this sum has been charged against him in the complaint, the defendant is entitled to a credit as against this charge of $164.50, together with $32, the cost of cutting and preparing the broken bricks for use; that is, he is entitled to a total credit of $196.50, and, as the claim of the plaintiff, with interest, amounts to $195.41, I shall let one item counterbalance the other, and direct judgment for the defendant without costs to either party.

As to the claim of the defendant that he is entitled to damages amounting to two or three thousand dollars for the difference in value between his houses as they are and the value as they would have been if bricks in accordance with the contract had been furnished, I do not believe it to be valid. It was his duty, upon receiving the bricks, to examine them, to see if they corresponded with his order, or with the sample; and, as he saw them to be discolored, reasonable prudence and care, all of which he was obliged to use, would have suggested that he make some test or examination to find out whether the discoloration was dirt or part of the bricks. This he failed to do, and therefore he cannot hold the plaintiff for his own want of care and diligence in failing to make an examination of the bricks delivered.

Let judgment be entered in accordance with this decision.